IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Linda Lee McKinniss, | : | |
| Plaintiff | : | Civil Action 2:14-cv-00293 |
| v. | : | Judge Smith |
| Carolyn W. Colvin, | : | Magistrate Judge Abel |
| Acting Commissioner of Social Security, | | |
| Defendant | : | |

### REPORT AND RECOMMENDATION

Plaintiff Linda Lee McKinniss brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff filed her application for benefits in October 2010 alleging an onset date of June 30, 1993 on the basis of iron deficiency with anemia, Crohn's disease, and a Barnett Continent Intestinal Reservoir. The administrative law judge concluded that plaintiff's impairments were not severe. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred in denying McKinniss's claim at step two of the sequential evaluation process.

**Procedural History.** Plaintiff Linda Lee McKinniss filed her application for disability insurance benefits on October 22, 2010, alleging that she became disabled on

June 30, 1993, at age 42, by iron deficiency with anemia, Crohn's disease, and a Barnett Continent Intestinal Reservoir.  (R. 139, 169.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On October 19, 2012, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 20.)  A vocational expert also testified.  On November 19, 2012, the administrative law judge issued a decision finding that McKinniss was not disabled within the meaning of the Act.  (R. 10-15.)  On January 30, 2014, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.** Linda Lee McKinniss was born February 13, 1951.  (R. 139.) She has a high school education and completed a certificate program in medical office management.  (R. 170.)  She has worked as a cage cleaner in a pet store, a department store manager, a nurse's aid and a sales clerk.  She last worked October 31, 2001.  (R. 169-70.)

**Plaintiff's Testimony.** Plaintiff had a high school education. She completed a medical office management certification in 2004. In order to obtain certification, she attended classes full time and completed homework assignments. Plaintiff had performed some volunteer work at the hospital when she could not find a job. She sat at a desk and checked in patients one day a week.

Plaintiff testified that she used to have a horse, but she had to sell her horse because she could no longer care for her. She had the horse from 2000 to 2010, but McKinniss had been unable to do any of the work of caring for her other than feeding and grooming her. Her husband and her granddaughter were left to care for the horse.

From 1993 through 2001, plaintiff was not able to work because of her health problems. She had difficulty standing or lifting, so she only lasted two to three months at each job. In 1993, plaintiff recalled that her symptoms were getting worse, and she could not complete daily functions. Despite this worsening of symptoms, plaintiff tried to work because she needed money for bills. In 2003 and 2004, she went back to school. She hoped that if she had a job that permitted her to sit, she could work. But her health prevented her from obtaining employment.

Plaintiff testified that in 1991, she had a lot of bleeding as a result of the ileostomy. She experienced a lot of pain and vomiting. The bleeding was heavy. Plaintiff had to take extra breaks. She need to sit down every 20-30 minutes. Although she applied for jobs, no one would hire her because of her health problems. Plaintiff testified, however, that even if she had been hired, she would not have been able to complete a full week's worth of work. She would have missed work and required hospitalization. Plaintiff had two resections. She was not able to perform any housework or lift anything because of risk of hernias. She likely would have missed a couple of days of work each week had she been working at that time. Walking was difficult for her and she had abdominal pain.

During this time, plaintiff lived in a trailer with her husband. She had her grandchildren help her with housework. She could not vacuum, grocery shop, or carry the laundry. She used to watch television, read, or knit. She had to get up every 20 minutes to prevent blood clots.

(R. 38-54.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

<u>Riverside Methodist Hospital</u>. In April 1983, plaintiff had an ileostomy for treatment of Crohn's disease. In May 1983, plaintiff began having bleeding and underwent a surgical revision. In February 1984, plaintiff began to experience bleeding and abdominal pain. On February 21, 1984, plaintiff underwent an excision ileostomy stoma with revision.  She was diagnosed with ileostomy bleeding secondary to Crohn's disease. The ileostomy was working well following surgery and she was stable on discharge. (R. 224.)

In March 1984, plaintiff presented at the emergency room with complaints of abdominal pain and vomiting. She was diagnosed with acute gastroenteritis and admitted to the hospital for three days. (R. 242.)

On July 28, 1984, plaintiff was hospitalized for ileostomy bleeding. She filled about three bags of bright red blood each day. (R. 256-74.) On September 11, 1984, plaintiff was admitted for acute back pain secondary to enteritis. (R. 276-87.)

On July 12, 1985, plaintiff was admitted to the hospital for bleeding from her ileosotomy resulting in syncopal attacks. On June 16, 1986, plaintiff was admitted to the hospital with complaints of nausea, vomiting, and abdominal pain. She had bleeding from her ileostomy. She had a second revision. (R. 331.)

A May 11, 1989 treatment note indicated that plaintiff had undergone a third ileostomy revision in December 1987 at the Cleveland Clinic. (R. 347.)

On January 9, 1990, plaintiff presented to the emergency room with complaints of intermittent flares of loose stools. She had had vomiting and diarrhea for the past three or four days. She was diagnosed with viral gastroenteritis. (R. 353.)

On May 7, 1991, plaintiff underwent surgery to replace a Brook's ileostomy with Barnett Continent ileostomy. (R. 359.) Plaintiff was hospitalized for twenty days. (R. 364.)

### Administrative Law Judge's Findings.

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 1993.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 30, 1993 through her date last insured of June 30, 1993 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following medically determinable impairments: a history of inflammatory bowel disease; a status post tenovaginotomy, flexor tendon, right thumb, without sequelae; a status post Barrett Continent Intestinal Reservoir implantation with stoma, replacing prior ileostomy, without sequelae; and a history of recurrent ileostomy bleeding (20 CFR 404.1521 *et seq.*)

> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.)
>
> 5. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 30, 1993, the alleged onset date, through June 30, 1993, the date last insured (20 CFR 404.1520(c)).

(R. 12-14.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge erred in denying McKinniss's claim at step two of the sequential evaluation process. The burden at step two has been construed as a *de minimis* hurdle. An impairment is considered not severe only if it is a slight abnormality that minimally affects an individual's work ability regardless of age, education and experience. Basic work activities include understanding, carrying out, and remembering instructions; exercising judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

Plaintiff argues that the administrative law judge engaged in circular reasoning in concluding that plaintiff did not meet step two. The administrative law judge concluded that McKinniss's testimony about her pain and limitations was not sufficiently credible and used that to support his finding of "not severe" to deny her benefits. The administrative law judge's stated reason for finding McKinniss to be not credible, however, was that her allegations were inconsistent with a finding that she had no severe impairment or combination of impairments. Plaintiff argues that the administrative law judge relied solely on objective medical evidence to deny McKinniss's claim. According to plaintiff, subjective complaints of pain may support a claim for disability.

Plaintiff maintains that she had suffered from Crohn's disease for a number of years and underwent multiple surgeries to attempt to resolve serious symptoms.

7

**Analysis.** The administrative law judge concluded that plaintiff did not meet her burden at step two of the sequential evaluation. A claimant's burden of proof at step two "has been construed as a *de minimis* hurdle in the disability determination process. . . . [A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)(citing *Farris v. Sec'y of Health and Human Serv.,* 773 F.2d 85, 89–90 (6th Cir.1985)). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis." *Bowen v. Yuckert,* 482 U.S. 137, 158–59 (1987). Step-two of the sequential evaluation is used to "screen out totally groundless claims." *Farris,* 773 F.2d at 89.

The administrative law judge stated:

At the hearing, the claimant's representative noted that Exhibits 1F and 2F are the only exhibits containing medical evidence relevant to the time period in question, prior to June 30, 1993. Those exhibits document that the claimant had ileostomy in April 1983 to treat Crohn's disease, that she had trouble with bleeding in February 1984, had symptoms of acute back pain secondary to enteritis in September 1984, had bleeding in July 1985, again had bleeding from her ileostomy stoma in July 1985, had stomal stenosis in June 1986 (Exhibit 1F), and underwent creation of Barnett Continent Ileostomy Reservoir to cure ill-fitting appliance and peristomal ulceration of the existing ileostomy in May 1991 (Exhibits 1F, 2F). There is also a February 1996 treatment note indicating that the claimant was then reevaluated for recurrence of Crohn's disease due to then complaints that she "had been having some problems with pain and some difficulty with the ostomy"; a pouchoscopy with biopsy was interpreted as normal at that time (Exhibit 12F). Given that this is the only potentially relevant documented evidence, State agency medical consultants opined that there is insufficient evidence in the record to support a finding that the claimant

8

> had a severe impairment during that time (Exhibits 1A, 3A). Great weight is granted to these assessments as those physicians are familiar with this Agency's program familiarity, had the benefit of a longitudinal view of the medical evidence, and rendered opinions consistent with the greater of the medical evidence and other credible opinion evidence.
>
> As to potential symptoms and limitations stemming from the impairments that had been documented up until that point, the claimant alleged, upon leading questioning by her representative, that she experienced abdominal pain in that time, which prevented her from sitting, standing or walking for extended periods of time, such that she had to sit/stand/change position every 20 minutes or so. However, the claimant's recitation of her functional capacity as of that time was unreliable and inconsistent; in fact, the claimant on multiple occasions noted that she had difficulty remembering her symptoms/limitations/work history in that time. Further, there simply is no objective evidence in the record to support the claimant's testimony of such severe limitations.

(R. 13-14.)

The administrative law judge considered all the potentially relevant evidence in the record. There were no medical records from 1990 to 1993 from which the administrative law judge could determine the severity of plaintiff's impairments. The administrative law judge relied on the opinions of the state agency medical consultants who concluded that there was insufficient evidence to determine the severity of plaintiff's impairments. R. 78, 85.

Plaintiff acknowledged that the record does not contain medical records during the relevant time frame. The medical record contains large gaps of time. There are no medical records between May 1991 and February 1996. In February 1996, plaintiff was evaluated for a recurrence of Crohn's disease. The ostomy was normal in appearance.

There were no ulcerations, erosions or erythema of the mucosa. No abnormalities were found during the pouchoscopy. (R. 731.)  Plaintiff has not pointed to any evidence supporting her assertion that her impairment was severe during the relevant time frame or provided any information concerning the limitations imposed on her ability to work during that time. In her testimony, plaintiff acknowledged that it was difficult for her to remember that far back. She testified that her symptoms were getting worse and that she missed work because of hospitalizations. The record, however, does not contain any records of hospitalizations during that time frame, nor has plaintiff provided any explanation for the apparent lack of treatment during the time period at issue.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

                                             s/Mark R.  Abel
                                         United States Magistrate Judge